IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER JUSTIN LANG,

    Plaintiff,

v.

COUNTY OF SONOMA, et al.,

    Defendants.

NO. C12-0983 TEH

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

    This matter comes before the Court on Defendants' Motion to Dismiss, heard on September 17, 2012. After careful consideration of the papers and the parties' arguments, the Court now GRANTS the motion in part and DENIES it in part.

**BACKGROUND**

    Plaintiff Peter Lang alleges the following:

    On June 8, 2011, his wife called the Sonoma County Sheriff's Office to report that her husband had been drinking and was seated behind the wheel of their vehicle in the driveway. First Amended Complaint ("FAC") ¶ 17. Deputy-Defendants Salkin and Haas responded to the scene. *Id.* Defendants Salkin and Haas "threw Plaintiff to the ground, fracturing his shoulder, and then handcuffed him [sic] behind his back. Although Plaintiff offered no resistance, Defendant Salkin struck numerous closed-fisted blows to Plaintiff's face and head. Simultaneously, Defendant Haas delivered numerous full-force baton blows to Plaintiff's knees." *Id.* ¶ 19. This resulted in a fracture to Lang's knee and "numerous lacerations to his head and face." *Id.* ¶ 18.

Two civilian witnesses to the beating called 911. *Id.* ¶ 21. Deputy-Defendant Mark Fuston found out the identities of the witnesses and "attempted to dissuade them from . . . testifying, informing them, among other things, that the Plaintiff was a 'wife beater' who had attempted to take the officer's [sic] gun and steal their car, and that he was previously convicted of assaulting a peace officer. None of these facts were true, nor did Defendant Fuston have any reasonable basis for believing they were true." *Id.* ¶ 21.

After Lang was arrested, Defendants Salkin, Haas and Fuston "conspired and agreed to allege in a crime report to the District Attorney of Sonoma County that Plaintiff had committed various felonies, which they knew to be untrue, for the purpose of concealing the excessive force Defendants Salkin and Haas perpetrated upon Plaintiff, and to create a false sense of justification for the degree of . . . . force that they employed." *Id.* ¶ 22. Defendants Salkin, Haas and Fuston then filed false "Arrest Narrative Reports" alleging that Lang had violated California Penal Code sections 69 (resisting arrest) and 243(c)(2) (battery on a peace officer). *Id.* ¶ 23. As a consequence, Lang was prosecuted on three felony counts. *Id.*

At Lang's preliminary hearing, Salkin committed perjury "regarding a prior credibility issue." *Id*. ¶ 25. The preliminary hearing judge dismissed Count One of the indictment and reduced counts Two and Three to misdemeanors. *Id*. ¶ 24. Salkin's false testimony was later discovered, and the District Attorney moved to dismiss, "in the interests of justice," the remaining two counts of battery on a peace officer. *Id.* ¶ 26. Lang pleaded no contest to one count of Driving Under the Influence. *See id.*

Lang brings this action under 42 U.S.C. sections 1983 and 1988 and the Fourth Amendment of the U.S. Constitution against the three officers, the County of Sonoma, and the Sonoma County Sheriff's Office. He also asserts the following state law claims: a claim of assault and battery against Defendants Salkin and Haas, a claim of negligence against all Defendants, and a claim of Intentional Infliction of Emotional Distress ("IIED") against all Defendants.

**LEGAL STANDARD**

2

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.,* 487 F.3d 1246, 1249 (9th Cir. 2007). The court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the deficiencies in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

**DISCUSSION**

**1. Section 1983 claim against Defendant Fuston**

"Every person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. The first step in any such claim is

3

to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citations omitted).

Here, Lang identifies the Fourth Amendment as the constitutional right infringed. FAC ¶¶ 20-21, 33-34, 38. He identifies no other constitutional or statutory right. The Fourth Amendment, applicable to the states through the Fourteenth Amendment, protects individuals against arrest without probable cause, *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984), and against the use of excessive force during arrest procedures. *Robins v. Harum*, 773 F.2d 1004, 1008 (9th Cir. 1985); *see also U.S. v. Guzman-Padilla*, 573 F.3d 865, 876 (9th Cir. 2009). Claims that law enforcement officials have used excessive force in the course of an arrest are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Robinson v. Solano Cnty.*, 278 F.3d 1007, 1009 (9th Cir. 2002) (en banc) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Defendant Fuston moves to dismiss the section 1983 claim against him on the ground that he cannot have violated Plaintiff's Fourth Amendment rights by covering up the incident of excessive force after it was completed. Motion to Dismiss ("MTD") at 4-6. Defendant is correct that what Plaintiff alleges is essentially a cover-up: that Defendant Fuston attempted to manipulate witnesses to the June 8 use of force, made defamatory statements about Lang, and conspired with the other deputies to make a false report to the District Attorney, causing Lang to be falsely prosecuted. FAC ¶¶ 21-22.

The legal underpinnings of the claim as pleaded are questionable. Plaintiff states a cause of action against Defendant Fuston under the Fourth Amendment stemming from the June 8 use of force by Defendants Salkin and Haas. *See* FAC ¶¶ 28, 34 (Defendant Fuston "caused Plaintiff to be subjected to a deprivation of his Fourth Amendment rights by actively taking measures to conceal the use of unreasonable . . . and excessive force against Plaintiff."). But Plaintiff cites no case law to support the proposition that a cover-up of unconstitutional conduct is properly viewed as violative of the underlying constitutional right. *See* MTD at 4-6; *Green v. New Jersey State Police*, 2006 WL 2289528, at *4 (D.N.J. Aug. 9, 2006) ("Green may not bootstrap the other officers' alleged Fourth Amendment

4

violations into a claim against Schusler by merely alleging a conspiracy to cover-up the Fourth Amendment violations after the fact"). The right infringed by the cover-up, according to the complaint, seems to be that it either contributed to Salkin and Haas's ability to act with impunity or that it interfered with Plaintiff's ability to seek redress. *See, e .g., Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998) (cover-up could violate Due Process right of meaningful access to the courts). It is unclear to the court that under either theory, the claim is properly pleaded under the Fourth Amendment, at least with respect to the June 8 use of force.

The Fourth Amendment may be violated by a defendant's material contribution to a false prosecution. *See Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (viewing coroner's submission of false autopsy report, leading to wrongful prosecution, as a violation of the plaintiff's Fourth Amendment rights); s*ee also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004) (malicious prosecution); *Dugan v. Cnty. of Los Angeles*, 2012 WL 1161638 at *3 (C.D. Cal. April 9, 2012) (same). But while Plaintiff discusses Fuston's role in the subsequent false prosecution of Plaintiff, FAC ¶¶ 21-23, he pleads his Fourth Amendment claim against Fuston as looking backward in time to the June 8 use of force. *See* FAC ¶ 34. The Court is unaware of any cases recognizing the sort of accessory-after-the-fact liability under the Fourth Amendment that Plaintiff seeks to impose.

Concluding that Plaintiff has not properly pleaded a section 1983 claim against Defendant Fuston, the Court DISMISSES the claim without prejudice.

**2. Section 1983 claim against municipal entities under *Monell v. New York***

Section 1983 imposes liability on municipalities for constitutional deprivations resulting from actions taken pursuant to government policy or custom. *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690-91 (1978). While municipal liability is not permitted on a respondeat superior theory, *id.*, "local government units" "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy . . . or decision officially

5

adopted" or for "deprivations visited pursuant to [unofficial] governmental 'custom'" *Id.* at 690 (citation omitted).

There are three ways to show a policy or custom of a municipality: "(1) by showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." *Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir. 2005) (internal quotation marks and citations omitted). A municipal policy "may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Id.* (quoting *Nadell v. Las Vegas Metro. Police Dep't*, 268 F.3d 924, 929 (9th Cir. 2001)).

A faulted policy can be one of inaction. "Under an 'inaction' policy claim, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010) (internal quotation marks and citation omitted). A municipality's failure to train its employees can constitute such a claim of omission or inaction by the municipality. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)).

Here, Plaintiff alleges that the actions of Deputies Salkin, Haas, and Fuston were taken pursuant to the longstanding practice or custom of the police department, FAC ¶ 38, that the deputies' actions were ratified after-the-fact by higher-ups in the department, FAC ¶ 40, and that the department failed to train its officers. FAC ¶ 39.

Defendants argue in their Motion to Dismiss that Plaintiff "merely concludes, without any factual support, that 'customs, policies, practices and/or procedures' existed that caused constitutional violations." MTD at 7 (citing FAC ¶ 38.) To the contrary: Plaintiff includes nearly three full pages of allegations against the Sheriff's Office, including "tolerating the use of excessive and/or unjustified force, including the use of batons, offensive tactics, and

application of control holds during the seizure of a person . . . Failing to properly investigate and/or evaluate complaints of incidents of unlawful seizures and excessive force; . . . Allowing, tolerating, and/or encouraging police officers to file incomplete or inaccurate police reports[,] false police reports, make false statements, intimidate, bias and/or 'coach' witnesses to give false information and/or attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful police conduct by withholding and/or concealing material information. . . . [Tolerating] and/or encourag[ing] a 'code of silence' among law enforcement officers, whereby a . . . member of the department does not provide adverse information against a fellow officer . . . [and failing] to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants Salkin, Haas, Fuston, and Does 1-10 . . . ." FAC ¶¶ 38-39. Hardly "naked assertions," *Iqbal*, 556 U.S. at 678, these allegations provide sufficient detail to state a claim that the officers acted pursuant to a departmental pattern or practice.

Accordingly, the Court DENIES the motion to dismiss the section 1983 claim against the municipal defendants.

### 3. State law claims against municipal actors

Under the California Tort Claims Act, "A public entity is not liable for injury arising from an act or omission except as provided by statute." *Hoff v. Vacaville Unified School Dist.*, 19 Cal. 4th 925, 932 (1998) (citing Cal. Gov't Code § 815(a)).

Both parties agree in their papers that California Government Code section 815.2(a) provides the statutory basis for vicarious liability on the part of public entities for the tortious acts and omissions of their employees. *See Scott v. Cnty. of Los Angeles*, 27 Cal. App. 4th 125, 140 (1994); *see also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002) (en banc) ("California . . . has rejected the *Monell* rule and imposes liability on counties under the doctrine of respondeat superior for acts of county employees; it grants immunity to counties only where the public employee would also be immune").

1    Yet Plaintiff's complaint makes no mention of Government Code section 815.2. *See*
2 FAC ¶¶ 45-48 (negligence), 55-57 (IIED). Lang argues in his Opposition ("Opp'n") that
3 section 815.2 provides the statutory basis for his claim. Opp'n at 11. But the language of the
4 complaint seems to allege *direct* liability on the part of the municipal entities and is styled as
5 a *Monell* claim would be. *See* FAC ¶¶ 45-48. At the hearing in this matter, the Court asked
6 Plaintiff's counsel whether he intended to bring direct or vicarious liability claims against the
7 municipality. His answer was "both." But he has failed to properly plead either vicarious
8 liability claims under Government Code section 815.2 or any statutory basis for direct
9 municipal liability claims.
10   Accordingly, the Court DISMISSES both the negligence and IIED claims against the
11 municipal entities without prejudice to Plaintiff's proper re-pleading of such claims.

### 4. Intentional Infliction of Emotional Distress ("IIED") claim

14   The elements of a prima facie case of IIED are: (1) outrageous conduct by the
15 defendant; (2) intention to cause or reckless disregard of the probability of causing emotional
16 distress; (3) severe emotional suffering and (4) actual and proximate cause. *Aquino v.*
17 *Superior Court*, 21 Cal. App. 4th 847, 856 (1993).

18   "Whether a defendant's conduct can reasonably be found to be outrageous is a
19 question of law that must initially be determined by the court; if reasonable persons may
20 differ, it is for the jury to determine whether the conduct was, in fact, outrageous. There is
21 no bright line standard for judging outrageous conduct, and a case-by-case appraisal of
22 conduct is required." *Arres v. City of Fresno*, 2011 WL 284971 at *29 (E.D. Cal. 2011)
23 (quoting *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007), and citing *Cochran v.*
24 *Cochran*, 65 Cal. App. 4th 488, 494 (1998)) (internal quotation marks omitted). "[S]evere
25 emotional distress means highly unpleasant mental suffering or anguish from socially
26 unacceptable conduct which entails such intense, enduring and nontrivial emotional distress
27 that no reasonable person in a civilized society should be expected to endure it." *Schild v.*
28 *Rubin*, 232 Cal. App. 3d 755, 762-763 (1991) (internal quotation marks, brackets and

8

citations omitted). "It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." *Fletcher v. W. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 397 (1970) (internal quotation marks and citation omitted).

Plaintiff claims that he has suffered severe distress due to "the use of excessive force against Plaintiff and the fabrication of evidence regarding the circumstances of Plaintiff's arrest, resulting in the filing of meritless criminal charges against him." FAC ¶ 55. Defendants argue that Plaintiff's allegations are conclusory and cite *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal. App. 3d 590, 619 (1989), for the proposition that "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." MTD at 13. However, the conduct alleged here is beyond trivial. Plaintiff has alleged facts from which a jury could find outrageous conduct, the presence of severe emotional distress, and an intent on the part of Defendants Salkin, Haas, and Fuston to cause such distress.

Accordingly, the Court DENIES the Motion to Dismiss the IIED claim against the individual defendants.

**5. Exemplary damages**

Defendants move to dismiss Plaintiff's claims for exemplary damages against the municipal defendants, both under section 1983 and under state law, as well as claims under California Civil Code section 52 against all defendants. MTD at 13-14. Plaintiff agrees to amend to abandon these claims. Opp'n at 13. It is unclear to the Court from the pleadings and from Plaintiff's answers to questions at oral argument whether Plaintiff wishes to maintain any other claims for punitive damages. Accordingly, the Court GRANTS the motion to dismiss all punitive damages claims against municipal defendants, as well as punitive damages claims under California Civil Code section 52 against any defendant, but grants leave to amend to state any other claims for which punitive damages are permitted under law.

9

**CONCLUSION**

As discussed above, the Court GRANTS the motion to dismiss the section 1983 claim against Defendant Fuston; DENIES the motion to dismiss the section 1983 claim against the municipal defendants; GRANTS the motion to dismiss the state law negligence and IIED claims against the municipal defendants; and DENIES the motion as to the IIED claim against the individual defendants. The Court GRANTS the motion to dismiss punitive damages claims against the municipal defendants and punitive damages claims under California Civil Code section 52 against all defendants with prejudice, but allows leave to amend to allege any other claim for which punitive damages are authorized as a remedy. All other dismissals shall be without prejudice. Plaintiff shall file an amended complaint on or before **November 1, 2012.**

**IT IS SO ORDERED.**

Dated: 10/2/2012

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

10